# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided October 5, 2012

No. 11-5303

RALPH M. MARCUM, ET AL.,
APPELLANTS

v.

KENNETH LEE SALAZAR, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01912)

———

*John J. Jackson, III* was on the brief for appellants.

*Andrew C. Mergen*, *Allen M. Brabender*, and *Matthew Littleton*, Attorneys, U.S. Department of Justice, were on the brief for appellees. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, GRIFFITH, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On October 8, 2009, Appellants filed a law suit in the United States District Court for the District of Columbia claiming that the Fish and Wildlife Service ("FWS") had unlawfully denied their requests for permits to import hunting trophies taken from elephant hunts in Zambia in 2005 and 2006. The District Court rejected Appellants' claims and granted summary judgment to the Government. Because this matter was unripe for review when the District Court heard the case and issued its decision, the record on appeal is incomplete. We therefore vacate the judgment of the District Court and remand the case for further consideration.

## BACKGROUND

The facts underlying the parties' dispute are succinctly set forth in a Memorandum Opinion issued by the District Court on August 30, 2011:

> In 2005 and 2006, [Appellants] Ralph Marcum, Walt Maximuck, Earl Slusser, and Dean Mori each killed at least one elephant in Zambia for sport and then applied to FWS for an import permit to import the trophy into the United States. To import their trophies, [Appellants] needed a CITES [Convention on International Trade in Endangered Species of Wild Fauna and Flora] export permit from Zambia and a CITES import permit from FWS. Before issuing an import permit for sport-hunted elephants, FWS must find, among other things, that: (1) the import "is for purposes that would not be detrimental to the survival of the species," and (2) "the killing of the animal whose trophy is intended for import would enhance survival of the species."

FWS's Division of Scientific Authority ("DSA," the designated CITES "Scientific Authority" for the United States) makes the regulatory "non-detriment" finding and sends it to FWS's Division of Management Authority ("DMA," the designated CITES "Management Authority" for the United States). This DSA finding is referred to as an "Advice." DMA considers the DSA "non-detriment" finding and its own assessment as to whether the import would "enhance the survival of the species" in deciding whether or not to issue permits. On May 11, 2005, DSA sent DMA its "General Advice" on sport-hunted elephants in Zambia for calendar year 2005. After considering [Appellants'] applications as well as materials submitted by ZAWA [the Zambian wildlife agency], DSA found several obstacles to making a non-detriment finding . . . . DSA also relied on the findings of the 2002 CITES Panel, and found no evidence that the situation in Zambia had materially improved since the CITES Panel issued its findings about ZAWA's [efforts] to control poaching. In light of these findings, DSA concluded that it was unable to make the non-detriment finding required to permit import of sport-hunted elephant trophies.

Just over a week later, FWS informed ZAWA that it would be unable to issue import permits for sport-hunted elephants on the basis of the information ZAWA provided to date, and requested additional information to address these concerns. In June 2005, ZAWA sent FWS more information about Zambian elephants. Although FWS did receive this additional information from Zambia, it was insufficient for FWS to change [its] mind[] on the possibility of issuing import permits for elephants. FWS gave ZAWA a third chance to address the outstanding concerns.

By March 2008, although ZAWA had sent a responsive report, FWS still hadn't received the information necessary to support the required non-detriment and enhancement findings. It gave ZAWA a fourth opportunity to provide the necessary information. In September 2008, ZAWA responded with three additional pages. The following year, at the biannual Conference of the Parties to CITES, Zambia again petitioned to downlist its elephant population to Appendix II, which was again voted down by the Parties. FWS asked ZAWA a fifth time for further information to support a non-detriment finding on May 27, 2009. Having received no further response, FWS proceeded to process plaintiffs' permit applications.

*Marcum v. Salazar*, 810 F. Supp. 2d 56, 62–64 (D.D.C. 2011) (citations and alterations omitted).

Appellants filed suit in District Court on October 8, 2009, while FWS was still soliciting additional information on their permit applications. In 2010, while Appellants' suit was pending in District Court, DSA and DMA completed their evaluations of Appellants' applications. DSA declined to make a non-detriment determination and DMA declined to make an enhancement determination. On March 10, 2010, FWS denied Appellants' permit applications. On April 14, 2010, Appellants applied for reconsideration of FWS's permit denials. The request for reconsideration was denied on June 28, 2010. The District Court was aware of these developments and recounted these various actions in its decision. *See Marcum*, 810 F. Supp. 2d at 64–65.

On August 11, 2010, while the case was still before the District Court, Appellants submitted an administrative appeal

to the FWS Director pursuant to 50 C.F.R. § 13.29(e), which states that "[a] person who has received an adverse decision following submission of a request for reconsideration may submit a written appeal to the Regional Director for the region in which the issuing office is located, or to the Director for offices which report directly to the Director." Neither Appellants nor the Government advised the District Court that, because Appellants still had an administrative appeal pending with the FWS Director, the agency had yet to take final action on Appellants' permit applications.

On February 24, 2011, Appellants filed a motion for summary judgment with the District Court. Pls.' Mot. for Summ. J. (Feb. 24, 2011) (ECF No. 35). In their memorandum in support of the motion, Appellants intimated that FWS's June 28, 2010, denial of their request for reconsideration was a "final agency action" and claimed that they were entitled to judicial review of that action because they were "adversely affected" by it. Mem. in Supp. of Pls.' Mot. for Summ. J., 9 (Feb. 24, 2011) (ECF No. 35-1). However, Appellants' motion for summary judgment and the associated memorandum failed to mention that their administrative appeal before the FWS Director was still pending.

On March 28, 2011, the Government filed a motion for summary judgment with the District Court. Defs.' Mot. for Summ. J. (Mar. 28, 2011) (ECF No. 37). The Government asserted that FWS "completed its processing" of Appellants' applications on March 10, 2010. Defs.' Mem. in Supp. of Mot. for Summ. J. & in Opp'n to Pls.' Mot. for Summ. J., 16 (Mar. 28, 2011) (ECF No. 37). The Government also intimated that final agency action was taken when FWS denied Appellants' request for reconsideration. *See id.* at 11–12. The Government's motion for summary judgment

mirrored Appellants' previously-filed motion in that it failed to indicate that Appellants still had an administrative appeal pending before the Director of FWS.

On August 30, 2011, after reviewing the parties' respective motions for summary judgment, the District Court upheld FWS's denial of Appellants' permit applications. *Marcum*, 810 F. Supp. 2d at 56. In its decision, the District Court addressed six claims raised by Appellants: Claims I and III involved various allegations regarding FWS's alleged failures to properly consider and process Appellants' import permit applications. *See id.* at 66–68. Claims II and VI involved Appellants' attempt to challenge the import permit denials through the citizen-suit provision of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1). *See id.* at 68–71. Claim V involved Appellants' assertion that, "in denying their permit applications, FWS applied certain 'requirements or criteria' in such a way as to create a 'new policy' or a new rule requiring formal public notice and comment rulemaking under the APA [Administrative Procedure Act], 5 U.S.C. § 553(b), and publication in the Federal Register." *Id.* at 71 (citation omitted); *see also id.* at 71–72. Claim IV involved Appellants' allegation "that FWS's denial of their import permit applications was 'arbitrary and capricious' because the imports wouldn't be detrimental to the survival of the species, and *would* enhance the survival of the species." *Id.* at 72 (citation omitted); *see also id.* at 72–78.

The District Court determined that: Claims I and III were moot, *see id.* at 66–68; Claims II and VI were not cognizable under the citizen-suit provision of the ESA, *see id*. at 68–71; Claim V failed because agency adjudications like permitting decisions do not require notice-and-comment rulemaking, *see id*. at 71–72; and Claim IV was unmeritorious because the agency's actions were not arbitrary and capricious, *see id*. at

72–78. Appellants' assertions that DSA and DMA had issued new non-detriment and enhancement findings in 2011 which, according to Appellants, suggest that the import of elephants taken in Zambia in 2011 would be acceptable, *see* Appellants' Opp'n & Resp. to Mot. of Defs.-Appellees Req. Judicial Notice & Cross-Mot. for Add'l Judicial Notice, 4–5 (June 11, 2012); Appellants' Supplement to Opp'n & Resp. (June 13, 2012), were not addressed by the District Court.

On appeal, Appellants have raised a number of issues contesting the District Court's summary judgment in favor of the Government. Appellants' principally contend that "[t]he negative DSA non-detriment finding and the negative DMA enhancement finding were both substantially arbitrary, capricious and irrational." Appellants' Final Br. at 57. According to Appellants, "[n]either [finding] included consideration of important information provided by Zambia or even that provided by the individual applicants." *Id*. Appellants ask this court to reverse the District Court's summary judgment in favor of the Government and remand to the District Court to set aside the Government's "defective and invalid permit denials." *Id*. at 58.

The Government, in turn, argues for the first time that "[t]his Court should dismiss [Appellants'] claims on appeal because they challenge non-final agency actions." Final Answering Br. of Defs.-Appellees at 16. The Government points out that Appellants administratively appealed FWS's decisions to the agency's Director, and that the Director had not yet decided those appeals when the District Court issued its decision. The Government contends that, "[i]n this circumstance, dismissal is the appropriate course." *Id*. The Government argues, in the alternative, that "[i]f this Court decides that the decisions being appealed are final agency

actions, it should affirm the district court's grant of summary judgment." *Id*.

On June 18, 2012, after Appellants had filed their opening brief with this court, the Government filed a motion to dismiss the appeal as moot. Defs.'-Appellees' Mot. to Dismiss as Moot (June 18, 2012) ("Mootness Motion"). In this motion, the Government contends that the case is moot because, on June 18, with this appeal pending, the FWS Director denied Appellants' administrative appeal. *Id.* at 2, Attach. A. In response to this motion, Appellants argue that

> dismissing this case as moot will require [Appellants] to start anew by bringing an entirely new suit to challenge the denial of their permit applications. Upon dismissing this case as moot, then, the Court should clear the path for [Appellants] to relitigate the issues in [a] new suit.

Appellants' Opp'n to Defs.'-Appellees' Mot. to Dismiss as Moot, 17 (July 2, 2012). The Government, in turn, "does not contest the [Appellants'] contention that this Court should vacate the district court's opinion if it dismisses this appeal as moot." Defs.'-Appellees' Reply to Mot. to Dismiss as Moot, 2, n.1 (July 9, 2012).

## ANALYSIS

We can only guess why neither the Government nor Appellants advised the District Court that Appellants had an administrative appeal pending with the agency during the time when this case was under consideration by the District Court. As soon as Appellants sought review by the FWS Director, it was clear that there was no final action for the District Court to review. Ongoing agency review renders an agency order

non-final and judicial review premature. *See*, *e.g.*, *Int'l Telecard Ass'n v. F.C.C.*, 166 F.3d 387, 388 (D.C. Cir. 1999); *Bellsouth Corp. v. F.C.C.*, 17 F.3d 1487, 1489 (D.C. Cir. 1994) (stating that when a party seeks "simultaneous judicial review and agency reconsideration," this is "an invitation to waste judicial resources"); *Wade v. F.C.C.*, 986 F.2d 1433, 1434 (D.C. Cir. 1993) (holding that "whether a party seeks agency reconsideration before, simultaneous with, or after filing an appeal or petition for judicial review . . . [the party's] attempt to seek judicial review must be dismissed as 'incurably premature'") (citations omitted). The parties obviously knew this – indeed, the Government now advances the strange argument that the case should be dismissed as "moot" because "[t]he non-final decisions challenged in this case are no longer operative, and this Court cannot grant any effective relief." Mootness Motion at 5. The parties' failure to advise the District Court of Appellants' pending administrative appeal was inexcusable, and it has caused an extraordinary "waste of judicial resources."

The Government's mootness argument is a *non sequitur*. The argument rests on the assumption that an agency action that is not final is not reviewable. If that is correct, then a non-final action cannot be rendered moot, because a challenge to a non-final action never raises a viable claim in the first place. The claim is not moot; if anything, it is simply not actionable for want of final agency action. A legal matter is technically "moot" only when a plaintiff has raised an actionable claim and intervening events – such as a settlement, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994), death of a party, *Fletcher v. Bryan*, 361 U.S. 126 (1959), or other changed circumstances, *see, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–94 (2000); *DeFunis v. Odegaard*, 416 U.S. 312 (1974) – make it clear that there is no longer a live

controversy between the parties. *See North Carolina v. Rice*, 404 U.S. 244, 246, (1971) (stating that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them"). The dispute between the parties in this case is anything but moot; Appellants are still seeking to obtain import permits for sport-hunted elephants and the Government still refuses to issue the permits.

The Government certainly could have filed a motion with the District Court to have Appellants' case dismissed on grounds of finality. It is well understood that there is a "strong presumption" that judicial review of administrative action is available only after a challenged action is "final." *Bell v. New Jersey*, 461 U.S. 773, 778 (1983). Indeed, "final agency action" is a prerequisite to most causes of action under the APA. *See* 5 U.S.C. § 704; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). The APA's finality requirement is not jurisdictional, however. *See Trudeau v. F.T.C.*, 456 F.3d 178, 184 (D.C. Cir. 2006); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003). Therefore, a "finality" objection must be raised by the agency in order to be preserved. In this case, the Government never raised finality with the District Court and therefore forfeited the objection. The District Court proceeded with the case because Appellants obviously had standing to challenge the denial of their permit applications and the District Court clearly had subject matter jurisdiction to address Appellants' claims.

The real problem in this case is ripeness, something that the District Court could not have seen because the parties never advised the court that Appellants had an administrative appeal pending with the FWS Director.

Even when an agency has taken final action, a court may refrain from reviewing a challenge to the action if the case is unripe for review. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158 (1967). The ripeness inquiry springs from the Article III case or controversy requirement that prohibits courts from issuing advisory opinions on speculative claims. *See Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 138 (1974). In other words, if a claim challenging final agency action is not concrete, it may be unfit for judicial review without regard to whether the complaining party has standing to pursue the claim. . . . Under *Abbott Laboratories,* the courts look to "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." [*Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).]

In applying the fitness prong of the *Abbott Laboratories* test, appellate courts consider (1) whether the issue is "purely legal," rather than one reliant on agency expertise, *id.*, (2) whether the challenged action is "final," *id.*, and (3) whether "the impact . . . upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review," *id.* at 152. In other words, the "fitness" of the issue for judicial review turns on whether a court's consideration of the case "would benefit from further factual development" and "whether judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Whitman v. Am. Trucking Ass'ns*, [531 U.S. 457, 479–80 (2001)]. These considerations protect "the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in

deciding issues in a concrete setting." *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985).

EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW 119–20 (2007).

On the record before us, it is clear that Appellants' action was not ripe for review by the District Court, nor is it ripe for review by this court. The agency did not take final action on Appellants' permit applications until the FWS Director decided Appellants' administrative appeal, and this did not occur until after the District Court issued its decision. As a result, the District Court unknowingly decided the case without the full administrative record before it. Because the challenged action before the District Court was not fit for review, the decision rendered by the District Court is, in turn, not fit for review by this court. We have no basis to review the agency's final action – *i.e.*, the FWS Director's decision denying Appellants' administrative appeal – because that action has yet to be properly presented to the District Court.

We have no occasion to decide here whether a case might arise in which an agency fails to object on grounds of finality, and thus forfeits the objection, but the case is nonetheless ripe for review. That case is not before us, so we offer no opinion on this question.

Appellants do not contend that they will suffer any "hardship" if this appeal is dismissed. Indeed, both parties have simply suggested that this court should vacate the District Court's decision to "clear the path for [Appellants] to relitigate the issues in [a] new suit." Appellants' Opp'n to Defs.'-Appellees' Mot. to Dismiss as Moot, 17 (July 2, 2012); *see also* Defs.'-Appellees' Reply to Mot. to Dismiss as Moot, 2, n.1 (July 9, 2012).

## CONCLUSION

For the reasons stated above, we hereby dismiss this appeal as unripe, vacate the decision of the District Court, and remand the case to the District Court for further consideration.