# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 27, 2014                    Decided June 13, 2014

No. 13-1176

AMERIJET INTERNATIONAL, INC.,
PETITIONER

v.

JOHN S. PISTOLE, IN HIS OFFICIAL CAPACITY AS
ADMINISTRATOR OF THE TRANSPORTATION SECURITY
ADMINISTRATION,
RESPONDENT

Consolidated with 13-1317, 14-1008

On Petitions for Review of an Agency Decision
of the Transportation Security Administration

*Joan M. Canny* argued the cause and filed the briefs for petitioner.

*Sharon Swingle*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the briefs were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *Jeffrey E. Sandberg*, Attorney.

Before: BROWN and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: These consolidated petitions concern proposed alternatives to security procedures mandated by the Transportation Security Administration ("TSA") and call on us to consider how much TSA must explain itself when it denies an aircraft operator's application for such alternate security procedures.

In two letters to TSA, Petitioner Amerijet International, Inc. ("Amerijet") requested alternative cargo screening procedures at various foreign airports it services. TSA largely denied its requests, first in a letter sent in May 2013, then in a videoconference held in November 2013, and, lastly, in a letter sent in January 2014. Amerijet filed three petitions for review in this court challenging these three denials. Amerijet argues that TSA's denials fail for want of reasoned decisionmaking because TSA offered "no explanation" and failed to identify "facts or other support" for its decisions. Br. of Pet'r at 40. Amerijet also contends that TSA's actions resulted in a violation of Amerijet's right to equal protection of the law. *Id.* at 47-48.

Even under a highly deferential standard of review, TSA's denials were arbitrary and capricious as to most of Amerijet's requests. The record indicates that TSA failed to adequately explain most of its denials. And by saying too little, TSA has provided "no basis upon which we [can] conclude that [its denials were] the product of reasoned decisionmaking." *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001). Because we have no meaningful basis

upon which to evaluate TSA's decisionmaking, the "proper course . . . is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Our decision to remand excludes two issues that have been raised by Amerijet on appeal. First, in one of its requests, Amerijet sought an alternative procedure that included removing a TSA requirement that the shipper not tender the cargo "at the aircraft operator's facility." TSA granted this request only for perishable products and only for those products tendered at one particular location, not at all foreign locations as Amerijet requested. TSA explained that it did not have sufficient information about the Amerijet locations at issue to make the determination required by its regulations. TSA invited Amerijet to submit additional information, which agency officials did not receive before denying Amerijet's request. In these circumstances, the agency's action survives arbitrary and capricious review.

Second, Amerijet sought to amend training protocols set forth in an alternate procedure that TSA had approved in 2011. This alternate procedure expired in October 2013 during the pendency of Amerijet's request to amend it. Nothing remains at stake in a dispute over a proposed amendment to a document that no longer has legal effect. And with nothing at stake, we have no power to resolve the dispute. "Because the exercise of judicial power under Article III depends upon the existence of a case or controversy, a federal court may not . . . decide questions that do not affect the rights of parties properly before it." EDWARDS, ELLIOTT & LEVY, FEDERAL STANDARDS OF REVIEW 134 (2d ed. 2013) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). We therefore dismiss as moot Amerijet's request to amend training protocols.

Because we are remanding this case for further consideration by TSA, Amerijet's equal protection claim is presently unripe for review. We therefore dismiss this claim without prejudice.

## I. BACKGROUND

### A. *Regulatory Framework*

Congress has charged TSA with safeguarding the country's civil aviation security. *See* 49 U.S.C. § 114(d)(1). This responsibility includes regulating the security of all-cargo flights. By statute, TSA administers a system "to screen, inspect, or otherwise ensure the security of all cargo that is to be transported in all-cargo aircraft." *Id.* § 44901(f).

Two tools TSA uses to protect the airways are security programs and security directives. In its security programs, TSA requires all-cargo aircraft operators like Amerijet to develop what is called a Full All-Cargo Aircraft Operator Standard Security Program. *See* 49 C.F.R. §§ 1544.101(h)-(i), 1544.103, 1544.105. Each aircraft operator's security program must meet certain safety standards and be approved by TSA. *Id.* § 1544.103(a). And TSA requires that an aircraft operator implement the procedures "described in its security program to prevent or deter the carriage of . . . any unauthorized explosives, incendiaries, and other destructive substances or items in cargo onboard an aircraft." *Id.* § 1544.205(a).

On top of these security programs, TSA issues security directives. Security directives set forth mandatory security measures that, in TSA's judgment, are "necessary to respond to a threat assessment or to a specific threat against civil aviation." *Id.* § 1544.305(a). Aircraft operators generally must

implement the security measures prescribed by a security directive. *Id.* § 1544.305(a)-(c).

TSA regulations allow aircraft operators to seek adjustments to their security programs. Such adjustments, however, must be approved by TSA, and approval is conditioned on TSA's determining that "safety and the public interest will allow [the amendment], and [that] the proposed amendment provides the level of security required under this part." *Id.* § 1544.105(b)(3).

Aircraft operators can also request alternative measures to those mandated in a TSA security directive. TSA regulations provide that, "[i]n the event that the aircraft operator is unable to implement the measures in the Security Directive, the aircraft operator must submit proposed alternative measures and the basis for submitting the alternative measures to TSA for approval. . . . The aircraft operator must implement any alternative measures approved by TSA." *Id.* § 1544.305(d).

## B. *Agency Proceedings and Amerijet's Petitions*

Amerijet is a shipping company that operates all-cargo aircraft to transport cargo from international locations to the United States. Amerijet has a TSA-approved security program, although the measures outlined therein are generally not at issue here. This dispute arises from the procedures mandated in a TSA security directive.

In 2011, TSA issued Security Directive No. 1544-11-04 (the "Directive") in response to an October 2010 incident in which "terrorists concealed explosives in cargo bound for the United States." Directive at 1, *reprinted in* Joint Appendix ("J.A.") 1. Reauthorized annually since its issuance, the

Directive requires specific screening procedures for certain categories of U.S.-bound cargo. These procedures are more stringent than those mandated by an aircraft operators' regular security program. For some categories of cargo, the Directive simply requires that aircraft operators follow their normal screening procedures. We need not go into more detail than this because the specifics are immaterial to our decision and would likely succumb to redaction in any event.

Shortly after the Directive issued, Amerijet sought – and TSA approved – an alternative procedure for screening cargo. *See* Security Directive Alternative Procedures at 1, *reprinted in* J.A. 10. TSA permitted Amerijet to use an enhanced physical search in lieu of the Directive's screening requirements at locations where the "inability to screen cargo with Explosives Trace Detection . . . would prevent the aircraft operator from transporting the cargo." *Id.* The approved alternative procedure included a requirement that Amerijet train its screeners in a manner detailed by TSA's order. *Id.* at 3-4. TSA's approval of this alternative expired in October 2013, while Amerijet's request to amend the alternative training procedures was pending. As explained above, the dispute over this matter is now moot.

Amerijet's 2011 request for alternative procedures was not its last. In 2012, Amerijet discovered that compliance with the Directive was infeasible at certain locations even with the "physical search" accommodation that TSA had approved. Amerijet concluded this after it learned, in connection with a TSA enforcement proceeding against it, that TSA interpreted some of the Directive's provisions differently than it did. Amerijet therefore requested additional modifications to the procedures required in the Directive, first in February 2013 and then in August 2013. *See* Application for Alternate Procedures, Feb. 8, 2013, *reprinted in* J.A. 34-39 ("February

Application"); Application for Alternate Procedures, Aug. 9, 2013, *reprinted in* Supplemental Joint Appendix ("S.J.A.") 59-63 ("August Application"); *see also* 49 C.F.R. § 1544.305(d). These requests form the basis of the present dispute.

In its February Application, Amerijet requested four alternative procedures. February Application at 1-2. Here again, we need not discuss specifics. Suffice it to say that the four requests sought to broaden the categories of cargo exempted from the Directive's specific screening procedures. After a conference with TSA officials in March 2013, Amerijet supplemented and clarified its four proposals. Supplementation and Clarification of Application for Alternate Procedures at 1, *reprinted in* J.A. 42.

In May 2013, TSA denied all four proposals in a short letter. Letter from Walter Craig to Richard Carpenter & Joan Canny (May 6, 2013), *reprinted in* J.A. 54-55 ("May Letter"). The letter states that, "[b]ased on a comprehensive review of the proposed [alternative procedures], the request is hereby denied." *Id.* at 1. It then states that the "basis for this denial is that TSA has determined that the procedures contained in the [proposal] are based on Amerijet's interpretation of [the Directive]." *Id.* The only other statement in the letter that is colorably responsive to Amerijet's application is TSA's assertion that one of the proposals, which concerned perishable commodities, was "not in the best interest of safety and the public interest" and did not "provide the level of security required under 49 C.F.R. Section 1544.205(a), (b), and (f)." *Id.* Amerijet timely petitioned for review of the May Letter, which is before the court as Petition No. 13-1176.

With its petition pending before this court, Amerijet submitted its August Application to TSA. Amerijet sought

TSA's approval of three alternate procedures and asked for clarification concerning certain screening requirements. August Application at 1. Two of its proposals sought to alter the Directive's requirements. *Id.* at 2-3. The third sought to alter the training protocols required in the alternate procedure TSA had approved in 2011. *Id.* at 3-5.

On November 4, 2013, TSA officials held a videoconference with representatives of Amerijet. TSA offered a counterproposal for one of the three alternative procedures Amerijet requested. And a TSA official said that Amerijet should consider its August Application denied except with respect to the counterproposal. *See* Pet'r's Supplemental Br. at 8-9. Amerijet sought review of this oral denial, filing Petition No. 13-1317. In the meantime, Amerijet and TSA reached an agreement concerning TSA's counterproposal, which led to TSA approving in December 2013 a set of alternative procedures for perishable commodities at one of the foreign airports serviced by Amerijet.

In January 2014, TSA issued a "final decision" denying the remaining requests for alternate procedures in the August Application. Letter from Joni M. Millan to Richard Carpenter (Jan. 14, 2014), *reprinted in* S.J.A. 79-83 ("January Letter"). Amerijet filed a third petition for review, Petition No. 14-1008, challenging the January Letter.

The court has consolidated the three petitions for review.

**II. ANALYSIS**

**A. *Jurisdiction and Finality***

Amerijet's petition for review was properly filed under the Federal Aviation Act, which provides in pertinent part that "a person disclosing a substantial interest in an order issued [under the Act] . . . may apply for review of the order by filing a petition" in this court. 49 U.S.C. § 46110(a). Amerijet undoubtedly has a substantial interest in whether TSA approves or denies its request for alternate procedures, and the agency does not contest this.

Nonetheless, judicial review is "restricted to review of final agency orders" so as to "avoid premature intervention in the administrative process." *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 411 (D.C. Cir. 2011) (internal quotation marks omitted). Agency action is "final" when it (1) marks "the consummation of the agency's decisionmaking process," and (2) is one in which "rights or obligations have been determined" or "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations and internal quotation marks omitted).

Amerijet's first and third petitions for review (Nos. 13-1176 and 14-1008) challenge final agency action in the form of TSA's May Letter and January Letter. These letters have "legal consequences" and were the "consummation" of TSA's consideration of Amerijet's requests. Amerijet's second petition (No. 13-1317) is another matter. It challenges TSA's oral denial delivered in a November 2013 videoconference. The oral denial was, quite obviously, a tentative conclusion and not the "consummation" of TSA's decisionmaking, which came two months later in the January

Letter. Amerijet's second petition is therefore not properly subject to review by this court.

## B. *The Standard of Review*

We recently explained the applicable standard of review in a related context in *Suburban Air Freight, Inc. v. TSA*, 716 F.3d 679 (D.C. Cir. 2013):

> Pursuant to the Administrative Procedure Act, we must uphold TSA's decisions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or unsupported by "substantial evidence." 5 U.S.C. § 706(2); 49 U.S.C. § 46110(c); *see Alaska Airlines, Inc. v. TSA*, 588 F.3d 1116, 1120 (D.C. Cir. 2009). In addition, "[w]e must give substantial deference to [the] agency's interpretation of its own regulations." *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994). . . . [W]e should afford similar deference to TSA's interpretation of [a security program]. . . . [W]e believe [security programs] are analogous to other formal, standardized, agency-approved documents with respect to which we afford agencies deference. Just as we defer to the Federal Energy Regulatory Commission's and the Federal Communications Commission's interpretations of tariffs, *see e.g.*, *FPL Energy Marcus Hook, L.P. v. FERC*, 430 F.3d 441, 446 (D.C. Cir. 2005); *Global NAPs, Inc. v. FCC*, 247 F.3d 252, 258 (D.C. Cir. 2001) (FCC), for example, so too must we defer to TSA's reasonable interpretation of a [security program].

*Id*. at 681-82. The same principles are in play here with respect to TSA security directives and agency decisions to grant or deny alternative procedures. And in applying this

standard of review, we remain mindful that, because Congress has entrusted TSA with broad authority over "civil aviation security," 49 U.S.C. §§ 114(d)(1), (f)(10), (*l*)(1), 44901(f), it is "TSA's job – not [an airline's] or ours – to strike a balance between convenience and security." *Suburban Air*, 716 F.3d at 683.

Nevertheless, even pursuant to this deferential standard of review, an agency must articulate an explanation for its action. We have explained that a "fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Tourus Records*, 259 F.3d at 737 (internal quotation marks omitted). This basic principle, codified in 5 U.S.C. § 555(e), is indispensable to sound judicial review. *See id.*; 5 U.S.C. § 555(e) (requiring that an agency provide an interested party with a "brief statement of the grounds for denial" of the party's request except "in affirming a prior denial or when the denial is self-explanatory"). At bottom, an agency must explain "why it chose to do what it did." *Tourus Records*, 259 F.3d at 737 (quoting Henry J. Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 DUKE L.J. 199, 222). And to this end, conclusory statements will not do; an "agency's statement must be one of *reasoning*." *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (emphasis added) (internal quotation marks omitted).

**C.** *TSA's Denials of Amerijet's Requests*

We now turn to the merits of Amerijet's first and third petitions for review.

### 1. May Letter

TSA's May Letter failed to explain why it denied the proposals in Amerijet's February Application. TSA ignored one of Amerijet's four requests entirely, and, with respect to two of the other requests, it simply restated the rules from which Amerijet sought exceptions. May Letter at 1 (bullet points (1) and (2)). Restating a rule from which an exception is sought explains nothing about *why* the agency denied the exception; it begs the question. And TSA's fourth denial is no better. TSA merely parroted the language of the standard, stating that "TSA has determined that exclusions from physical screening for special types of cargo . . . are not in the best interest of safety and the public interest . . . [and] do not provide the level of security required under [the regulations]." *Id.*; *see also* 49 C.F.R. § 1544.105(b)(3). This response, like the letter at issue in *Tourus Records*, is "not a statement of reasoning, but of conclusion." 259 F.3d at 737. It is arbitrary because it says nothing about "why" TSA made the determination. *See id.* Simply put, the May Letter had "all the explanatory power of the reply of Bart[le]by the Scrivener to his employer: 'I would prefer not to.'" *Butte Cnty.*, 613 F.3d at 195 (quoting HERMAN MELVILLE, BARTLEBY, THE SCRIVENER: A STORY OF WALL STREET 10 (Dover 1990) (1853)). TSA must say more.

At oral argument, TSA contended that because Amerijet sought discretionary exceptions from the Directive, Amerijet bore "some burden to make a showing" that its alternatives provided commensurate security. Oral Arg. Tape at 35:43 (Mar. 27, 2014). This is a sensible position in the abstract. Indeed, it seems reasonable and consistent with the regulations for TSA to require an aircraft operator requesting alternate measures to offer some explanation of why, in its view, the requested alternative would be equally safe and to

provide supporting evidence (to the extent such evidence is in the operator's possession). *See* 49 C.F.R. § 1544.305(d) (requiring aircraft operator to offer "the basis for submitting the alternative measures"). The problem with this argument, however, is that TSA did not articulate its denial on such terms. Under well-established law, we evaluate an agency's contemporaneous explanation for its actions and not "appellate counsel's *post hoc* rationalizations." *Tourus Records*, 259 F.3d at 738 (internal quotation marks omitted). TSA's denials are not "self-explanatory," *see id.* at 737 (quoting 5 U.S.C. § 555(e)), and, therefore, the agency did not afford Amerijet the "grounds for denial" to which it was entitled, 5 U.S.C. § 555(e). And this court is left to evaluate the reasons offered by TSA, which are insufficient.

## 2. January Letter

Whether the January Letter adequately explained why TSA denied the requests in the August Application presents a closer question. As explained above, one of the requests that TSA denied is now moot. That leaves two requests, which we consider in turn.

The first request concerned a requirement in the Directive relating to the "Customs-Trade Partnership Against Terrorism" ("C-TPAT") program, which is a voluntary partnership between the private sector and U.S. Customs and Border Protection. When certain other conditions are met, the Directive exempts cargo from additional screening requirements so long as the shipper is certified under the C-TPAT program. Directive at 4. Because Amerijet believed that the other conditions were "adequate to establish the consignor as known to Amerijet" and "based upon a reasonable risk assessment" for the foreign airports it services, Amerijet requested that this C-TPAT condition be

"removed." August Application at 3. TSA denied the request, stating that eliminating the C-TPAT certification requirement would not "provide a level of security commensurate with the other screening options provided by the [Directive]" and "would not be in the best interest of aviation security." January Letter at 3. TSA then listed three reasons why the "C-TPAT certification requirement is important." *Id.*

This response is an improvement on the purported explanation TSA offered in its May Letter, but it falls short of reasoned decisionmaking. Though TSA does not explicitly connect the dots in its explanation, this shortcoming is not itself fatal. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) ("We will . . . uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (internal quotation marks omitted)). By listing three ways in which the C-TPAT certification is important, TSA appears to explain that, because the C-TPAT requirement is useful, removing it entirely would not provide commensurate security. But this explanation does not address the main thrust of Amerijet's request – *i.e.*, that, in the locations serviced by Amerijet, the other conditions in Section II.C.1 of the Directive ensure adequate security and render the C-TPAT requirement unnecessary based "upon a reasonable risk assessment" of the areas at issue. August Application at 3. Given the impetus of Amerijet's request, listing the general worth of the C-TPAT requirement is programmatic boilerplate rather than reasoned explanation. We simply cannot tell if TSA considered whether, in the areas Amerijet services, the C-TPAT program affords security beyond that provided by the other conditions in Section II.C.1 of the Directive. Put another way, we cannot discern if TSA considered the substance of Amerijet's request and, if so, what reasons it had for denying it.

In its second request, Amerijet asked for two modifications to Section II.C.2 of the Directive. This provision exempts cargo from the Directive's screening requirements when the aircraft operator accepts the cargo from a direct shipper with an established "business relationship with the aircraft operator" and the cargo is not tendered "at the aircraft operator's facility." Directive at 4. Amerijet sought (1) to eliminate the requirement that the cargo not be tendered "at the aircraft operator's facility," and (2) to alter another condition in Section II.C.2. August Application at 3. TSA granted this request but only for perishable products and only for those products tendered at one particular location, not at all foreign locations as Amerijet requested. January Letter at 3-4. TSA explained that "local government security procedures, business practices and commodities . . . vary by location. . . . To ensure that safety and the public interest will allow the requested procedures . . . , TSA must review requests on a location-by-location basis and Amerijet must provide supporting information on a location-by-location basis. TSA is sufficiently aware of security practices within [the country where it granted the alternate procedures] and Amerijet's security capabilities within [that country] to implement the requested [procedures there]. Such is not the case in other locations where Amerijet operates." *Id.* at 4.

TSA's response passes muster. It is adequately explained, consistent with the regulations, and reasonable. As TSA interprets the regulations, it may approve a request for alternative procedures only if the "alternative measures provide a commensurate level of security and are consistent with the public interest." Supplemental Br. for Resp't at 10; *see also* Br. for Resp't at 30 ("TSA 'may' approve a proposed security program amendment where the 'designated official determines that safety and the public interest will allow it' and

where the proposed amendment 'provides the level of security required under this part.'" (quoting 49 C.F.R. § 1544.105(b)(3)). TSA determined that it did not have adequate information about other Amerijet locations to make the determination required by the regulations. It therefore elected for a phased approach, approving the request as to one location and inviting Amerijet to submit additional information as to other locations. (We note that it appears from the record that Amerijet planned to submit the requested information as part of a separate administrative request. *See* Letter from Rosa Fernandez to Joni M. Millan (Dec. 2, 2013) at 1, *reprinted in* S.J.A. 69.)

## D.  *The Appropriate Remedy*

The Supreme Court has made clear that when an agency's explanation does not permit a court to evaluate the agency's action, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Lorion*, 470 U.S. at 744. So it is here. Neither party has identified a rare circumstance that would justify departing from the "usual remedy" of a remand. *Tourus Records*, 259 F.3d at 737.

We are not in a position to assess Amerijet's equal protection claim because, as noted above, we have no meaningful basis upon which to evaluate TSA's denials of Amerijet's requests. Amerijet's equal protection claim is premised on TSA denying its requests for alternate procedures, together with an allegation that TSA allowed a competitor to use these same procedures. There is no way to weigh the viability of Amerijet's equal protection claim without a clear understanding of the agency's position with respect to the disputed denials. And with our remand of this case, the possibility remains that TSA may reconsider its prior

denials or offer adequate explanations for the agency's actions, either of which may moot Amerijet's equal protection claim.

In these circumstances, we find Amerijet's equal protection claim unripe for review. "[I]f a claim challenging final agency action is not concrete, it may be unfit for judicial review without regard to whether the complaining party has standing to pursue the claim." *Marcum v. Salazar*, 694 F.3d 123, 129 (D.C. Cir. 2012) (quoting EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW 119 (2007)). The courts look to "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The "fitness" of the issue for judicial review turns on whether a court's consideration of the case "would benefit from further factual development" and "whether judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). The ripeness doctrine thus protects "the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Eagle–Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985). These are particularly salient considerations in this case because the matters in dispute involve sensitive security issues. And it is also noteworthy that Amerijet does not contend that it will suffer any "hardship" if its equal protection claim is dismissed without prejudice pending further consideration by TSA on remand. *See Marcum*, 694 F.3d at 130. Therefore, it would be inappropriate for this court to consider the constitutionality of TSA's denials without affording the agency an opportunity to more fully address Amerijet's requests.

### III. CONCLUSION

For the reasons stated above, we dismiss Petition No. 13-1317, grant Petition No. 13-1176, and grant in part and deny in part Petition No. 14-1008. TSA's denials of Amerijet's requests for alternate security procedures are hereby remanded for further consideration, with the exception of the agency's partial denial of Requested Alternate Procedure 2, *see* S.J.A. 61, which was adequately explained, and its denial of Requested Alternate Procedure 3, *see id.*, which is now moot. Amerijet's equal protection claim is dismissed without prejudice as unripe.

*So ordered.*