# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 14, 2014                    Decided July 8, 2014

No. 12-5355

SELECT SPECIALTY HOSPITAL - BLOOMINGTON, INC., ET AL.,
APPELLANTS

v.

SYLVIA MATHEWS BURWELL, SECRETARY, UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
APPELLEE

Consolidated with 12-5358

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-cv-02008)
(No. 1:09-cv-02362)

*David J. Bird* argued the cause for appellants. With him on the briefs were *Andrew C. Bernasconi* and *Daniel Z. Herbst*.

*Joshua P. Waldman*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Michael S. Raab*, Attorney.

*R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS, BROWN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*. A group of long-term care hospitals challenges the Secretary's determination that, because the organizations operate out of buildings previously owned by hospital entities, they are not "new hospitals." Because we cannot tell how the Secretary arrived at this conclusion, we find it arbitrary and capricious.

I

Hospitals are costly to build. Medicare has traditionally provided for a "return on equity capital" for the construction of such buildings, which includes "depreciation, interest, taxes, insurance and similar expenses . . . for plant and fixed equipment, and for moveable equipment." Capital Payments Under the Inpatient Hospital Prospective Payment System, 52 Fed. Reg. 33,168, 33,168 (Sept. 1, 1987). Up until the late 1980s, capital reimbursements were provided on a reasonable cost basis—that is, "on the basis of current costs of the individual provider, rather than costs of a past period or fixed negotiated rate." 42 C.F.R. § 413.5(a) (explaining the reasonable-cost reimbursement scheme); 52 Fed. Reg. at 33,168.

In 1987, Congress directed the Secretary of Health and Human Services to develop a capital recovery scheme for

hospitals through the inpatient prospective payment system,[1] rather than the reasonable-cost reimbursement method. *See* Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4006(b)(1), 101 Stat. 1330 (1987); *see also* 42 U.S.C. § 1395ww(g)(1). It also authorized the Secretary to provide for appropriate exceptions to the capital prospective payment system. 42 U.S.C. § 1395ww(g)(1)(B)(iii). To comply with the congressional directive, the Secretary implemented a ten-year plan, which transitioned the Department from the old reasonable-cost capital payment system to capital repayments made through the new inpatient prospective payment system. *See* Prospective Payment System for Inpatient Hospital Capital-Related Costs, 56 Fed. Reg. 43,358 (Aug. 30, 1991).

Under this scheme, the Secretary exempted "new hospitals" from the inpatient prospective payment system for the first two years of existence. Instead, such hospitals would be entitled to 85% of their reasonable capital-related costs, harking back to the old system. *See* 56 Fed. Reg. at 43,362, 43,453. A "new hospital" is a "hospital that has operated (under previous or present ownership) for less than 2 years." *See* Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1993 Rates, 57 Fed. Reg. 39,746, 39,827 (Sept. 1, 1992); *see also* 42 C.F.R. § 412.300(b). About a year after the scheme was established, the following language was added to the existing regulations:

---

[1] This system "reimburse[s] qualifying hospitals at prospectively fixed rates . . . that remain static regardless of the costs incurred by a hospital." *See Cnty. of L.A. v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999). Most hospitals are reimbursed in accordance with a standard formula derived from national data, although some are reimbursed at hospital-specific rates. *See Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 694–95 (D.C. Cir. 2014).

The following hospitals are not new hospitals:

> (1) A hospital that builds new or replacement facilities at the same or another location even if coincidental with a change of ownership, a change in management, or a lease arrangement.

> (2) A hospital that closes and subsequently reopens.

> (3) A hospital that has been in operation for more than 2 years but has participated in the Medicare program for less than 2 years.

> (4) A hospital that changes its status from a hospital that is excluded from the prospective payment systems to a hospital that is subject to the capital prospective payment systems.

57 Fed. Reg. at 39,827; *see also* 42 C.F.R. § 412.300(b)(1)–(4) (codifying the exceptions). In adding these exceptions, the Secretary explained the exemption was intended only for "new entrants into the hospital field that do not have a historic asset base." *See* 57 Fed. Reg. at 39,790.

While the "new hospitals" exemption was originally conceived as a temporary measure, the Secretary made it a permanent one about ten years later. *See* 67 Fed. Reg. 31,404, 31,488–89 (May 9, 2002) (proposed rule); *see also* 67 Fed. Reg. 49,982, 50,101 (Aug. 1, 2002) (final rule). The provision was intended to be a "special protection to new hospitals," given concerns that "prospective payments . . . may not be adequate initially to cover the capital costs of newly built hospitals." *See* 67 Fed. Reg. at 50,101. But, the Secretary said, the exemption would "only be available to those hospitals that have not received reasonable cost-based

payments under the Medicare program in the past, and would need special protection during their initial period of operation." *Id.*

A group of long-term care hospitals ("the Hospitals"), all associated with the Select Specialty Hospitals organization, identified themselves as "new hospitals" within the meaning of 42 C.F.R. § 412.300(b). They claimed capital-cost reimbursements under the 85% "reasonable cost basis" rule, rather than the formulae provided by the prospective payment system. *See* J.A. at 155, 232. Most of the hospitals are "hospitals-within-hospitals"—independent entities that operate in the same building or campus as an established "host" hospital. J.A. at 154, 231. In contrast, some are freestanding hospitals. J.A. at 154–55.

An intermediary disagreed with the Hospitals' self-determined "new hospital" designation and reduced the amount of capital recovery. J.A. at 155, 232. The Hospitals appealed the intermediary's decision to the Provider Reimbursement Review Board ("the Board"). In considering the appeal, the Board determined the meaning of "hospital" under § 412.300(b) was ambiguous, as it was unclear whether the term referred to the institutional entity, the brick-and-mortar asset, or both. J.A. at 161, 237. As the parties stipulated that "all of the [leased] buildings . . . were operated by [a] hospital for more than 2 years prior to the lease arrangement," the Board determined the designation did not apply. J.A. at 162, 238; *see also* J.A. at 156, 232. Two board members dissented, arguing the majority unceremoniously disregarded the newly-formed nature of the business entity and the enormous capital expenditures involved in rehabilitating and reconstructing the facilities. *See* J.A. at 167–68, 242–43. The Medicare Administrator upheld the Board's decision.

The Hospitals challenged the Board's decision in district court, but the same outcome awaited them.[2] When presented with the Government's motion for summary judgment, the district court concluded both sides offered plausible interpretations of 42 C.F.R. § 412.300(b): one that permitted consideration of physical assets, and one that precluded it. *See* J.A. at 330. It also found the exceptions of § 412.300(b)(1)–(4) added to the interpretive disarray. Calling the prefatory language "regrettably . . . ambiguous," the court suggested "the ensuing examples [could be] merely examples, but also could be interpreted as enumerating an exclusive list." *See Select Specialty Hosp.—Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 340 (D.D.C. 2011). In light of the ambiguity, it proceeded to uphold the Board's determination as both reasonable and supported by substantial evidence. The Hospitals appealed.

## II

We review a district court's grant of summary judgment *de novo*, "which is to say we 'review the administrative action directly, according no particular deference to the judgment of the District Court.'" *Roberts v. United States*, 741 F.3d 152, 157–58 (D.C. Cir. 2014) (quoting *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 814 (D.C. Cir. 2002)). While we

---

[2] Because it was unclear whether the agency's decision applied to the freestanding hospitals, the district court remanded the case to the Administrator for clarification. *See Select Specialty Hosp.—Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 344 (D.D.C. 2011). The Administrator indicated in the affirmative. *See* J.A. at 354. The district court upheld the Administrator's subsequent determination regarding the freestanding hospitals. *See Select Specialty Hosp.—Bloomington, Inc. v. Sebelius*, 893 F. Supp. 2d 1, 5 (D.D.C. 2012). Those hospitals also appealed, and their appeal is now before us in this consolidated case.

generally give "substantial deference" to an agency's interpretation of its own regulation, deference is unwarranted if the interpretation is "plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citation and internal quotation mark omitted); *Kaiser Found. Hosps. v. Sebelius*, 708 F.3d 226, 230–31 (D.C. Cir. 2013).

## III

The question before us is whether the Board's interpretation of the Secretary's regulation—specifically, her definition of "new hospital"—is arbitrary and capricious. The parties begin at a curious starting point: the meaning of the word "hospital." The Hospitals suggest the meaning is clear—42 U.S.C. § 1395x(e) indicates "hospital" means the institutional entity, not the physical facility. *See* Appellants' Br. at 38, 42. As none of the Hospitals—independent offshoots of an overarching corporation—existed prior to the cost period at issue, they maintain their institutions are all "new." *See* Appellants' Br. at 42. But the meaning of "hospitals" is beside the point—the Government does not contest that a "hospital" could be the organizational entity. *See* Appellee's Br. at 31–33. Instead, the crux of the Government's concern is the meaning of the word "new"—a question to which § 1395x(e) does not speak. Unfortunately, neither does the Board's decision.

The Hospitals' disorientation is understandable; it was the Board that first puzzlingly emphasized the interpretation of "hospital," instead of "new." *See* J.A. at 161, 237 ("The Board finds that the regulation defining a 'new hospital' . . . is ambiguous, in that it is not clear if the term 'hospital' means the individual physical assets . . . or the business entity as a whole, which would include both bricks and mortar and the

operations."). On appeal, the Government attempts to patch up the Board's maladroitness by claiming the Board was interpreting the phrase "new hospital," as opposed to one word or the other. *See* Appellee's Br. at 35. But the Government's patch job is too little, too late. Simply put, the Board—having resolved a question that was tangential to the essential one—never adequately explained *how* to discern the newness of a hospital. Certainly, "individual physical assets" are to be considered—but in what way? *See* J.A. at 161, 237.

"[T]here are cases where an agency's failure to state its reasoning or to adopt an intelligible decisional standard is so glaring that we can declare with confidence that the agency action was arbitrary and capricious." *Checkosky v. S.E.C.*, 23 F.3d 452, 463 (D.C. Cir. 1994). This is one of them. We can easily recognize the two guiding principles motivating the Board's decision: (1) eliminating the possibility of double reimbursement and (2) giving newcomer hospitals without a historic asset base an opportunity to establish new operations. And yet, we cannot discern how the Board's decision serves these two principles.

A

We start with the first impetus—that "the exemption to receive cost reimbursement for the capital-related costs should be limited only to assets for which the Medicare program has not previously made payment under the reasonable cost principles." J.A. at 161–62, 237. After pronouncing that "at the very least, an analysis of the physical assets" is necessary under 42 C.F.R. § 412.300(a), the Board jumped to the conclusion that the prior operation of the various physical assets by other hospital entities meant that the assets had already been the subject of a reasonable cost basis reimbursement. *See* J.A. at 161, 237. The source of the

9

Board's sweeping presumption remains a mystery. Nothing in the record suggests a physical asset used by another hospital organization for a period of more than two years is inherently one that has already received capital reimbursement based on reasonable cost principles. Nor do we know how such a categorical approach faithfully serves the double-reimbursement principle. Even if prior hospital organizations had obtained reimbursement for an original building construction, additional costs specific to renovations—such as for new equipment—would not have been previously reimbursed. The Board's failure to connect the dots makes remand necessary. *See Phila. Gas Works v. FERC*, 989 F.2d 1246, 1250 (D.C. Cir. 1993) (explaining an agency's submission of an "inadequate explanation for its conclusions" warrants remand to the agency).

B

Before we reach the Board's other rationale, some untangling is in order. At oral argument, the Government's counsel seemed to suggest the Board employed a "new building" rationale, i.e., a new hospital (organizationally speaking) that constructs a facility from scratch is the only type of entity deserving of reimbursement based on reasonable cost principles. *See* Oral Arg. at 39:15 ("And the Secretary reasonably concluded here that newly built facilities are a more compelling need because there are greater capital costs . . . ."). This observation is distinct from the Board's reasoning. In the comments made during the initial promulgation of the exemption, the Secretary did say the exemption "would not apply to a facility that opens as an acute care hospital if that hospital has operated in the past under current or previous ownership and has a historic asset base." 57 Fed. Reg. at 23,649. But the Secretary also emphasized the newness of hospitals as entities and

organizations which, because of their newness, would have a harder time entering the field. *See id.* ("The exemption is intended to protect hospitals that come under the capital prospective payment system without a historic asset base and need special consideration for their *original plant and equipment* costs during their initial years of operation." (emphasis added)); *see also* 57 Fed. Reg. at 39,790 ("[W]e believe it is appropriate to restrict the new hospital exemption under the capital prospective payment system to *new entrants* into the hospital field that do not have a historic asset base." (emphasis added)). It appears the Board hewed to this holistic approach by stating only that, "at the very least," consideration of the physical assets is required. J.A. at 161, 237. The Secretary's position on appeal, however, is that new construction is a necessary condition.

Organizationally speaking, the Hospitals are newcomers to the field. No one disputes that, though the Hospitals are the progeny of a parent corporation specializing in the establishment of long-term care hospitals. But they are independent entities nonetheless, and the Board's decision evinces no difference between the Hospitals and new entrants to the field that are unaffiliated with any parent entity which would deprive them of the preferential treatment the regulations provide.

Even if assets were to govern the analysis, we still do not understand the Board's predilection for having something built from the ground up. Consider the fact that lease payments and renewals are included in the definition of reimbursable capital assets. *See* 42 C.F.R. § 412.302(b)(3); 42 C.F.R. § 413.130. This seems to suggest that a hospital (as an institution) need not build a physical asset brick-by-brick to be eligible for reimbursement on a reasonable-cost basis. *See* J.A. at 161, 237 ("The Board also finds significant that

this regulation which defines a new hospital explicitly states its purpose at 42 C.F.R. § 412.300(a) as establishing a reimbursement methodology for inpatient hospitals 'capital-related costs,' which are defined in § 412.302 and includes physical assets."). And yet, in its inquiry to determine the newness of a "hospital," the Board looked to when the "bricks and mortar were established" for a particular physical asset and who had laid them. *Id.* What is the difference between an old hospital building that has been completely gutted and renovated and a new hospital building built from the ground up? Will the Board's decision allow for recompense for the latter, but not the former?[3]

At oral argument, counsel equivocated when asked to describe the Board's decisional rationale. *Compare* Oral Arg. at 34:13 ("I think the definition now is you have to be both a new entity and you have to have a new facility, and the only thing the Secretary clarified here is that a renovation is not the same as a new building, and therefore you are not a new

---

[3] The Government explains that a case-by-case determination as to the "newness" of a hospital would "require the Department to conduct time-consuming examinations to determine how many renovations are 'enough' to make the facility 'new,' or how much a theoretical, newly-built facility would have cost if it had been constructed, and whether the renovations at issue were more costly." Appellee's Br. at 49–50. The Board, of course, did not articulate this particular rationale in its decision, and we therefore cannot entertain the Government's post hoc justification. *See Catholic Healthcare W. v. Sebelius*, 748 F.3d 351, 354 (D.C. Cir. 2014) ("[W]e do not affirm agency decisions on a legal analysis other than that expressed by the agency.").

hospital, but I think the Secretary is leaving open what happens in the next case when what you've renovated has never been a hospital."), *with* Oral Arg. at 38:16 ("What's dispositive is whether you build something new or whether you're just merely renovating."). His equivocation is telling. Despite the Board's decision, the district court's opinion, the Government's briefs on appeal, and oral argument, we still cannot discern precisely what the Board's decisional standard was. It is a standard that requires hospitals be built from the ground up, yet also a standard which leaves open the possibility of an existing building that had never served as a hospital or an older hospital—say, nonoperational for fifty years—being renovated and subsequently reimbursed under reasonable cost principles. Such an amorphous rule is, by definition, arbitrary and capricious. *See Coburn v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) (noting agency decisions that "lack coherence" and "make it impossible for this court to determine whether [such decisions] survive arbitrary and capricious review under the APA" fail the test of "reasoned decisionmaking").

IV

To be clear, we have no reason to doubt the Secretary's authority to define what a "new hospital" is. Nor do we have cause to question the Board's ability to adopt a decisional standard based on that definition. But when ambiguity begets ambiguity, making it such that we cannot discern the decisional standard, much less the correctness of its application, we have little choice but to declare the decision arbitrary and capricious—especially as our review is constrained to the rationale provided by the Board, *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), however unintelligible it may be.

We reverse the district court's grant of the Appellee's motion for summary judgment and remand with instruction to return this case to the Secretary for further proceedings not inconsistent with this opinion.

*So ordered.*