# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 12, 2018         Decided June 29, 2018

No. 17-5098

SAINT FRANCIS MEDICAL CENTER, ET AL.,
APPELLANTS

v.

ALEX M. AZAR II, SECRETARY OF HEALTH AND HUMAN
SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01659)

*Edgar C. Morrison, Jr.* argued the cause for appellants.
With him on the briefs were *Stephen A. Calhoun*, *Tim S. Leonard*, and *Barron P. Bogatto*.

*Melissa N. Patterson*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jessie K. Liu*, U.S. Attorney, and *Michael S. Raab*, Attorney.

Before: GARLAND, *Chief Judge*, and KAVANAUGH and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

Concurring opinion filed by *Circuit Judge* KAVANAUGH.

KATSAS, *Circuit Judge*:   In 2013, the Secretary of Health and Human Services promulgated a regulation that bars hospitals from seeking additional Medicare payments by challenging factual determinations that are relevant to the payment year at issue, but that were made many years earlier. By its terms, the 2013 regulation applies only to reopenings, which are proceedings through which various administrative actors within HHS may reconsider their own prior decisions. We consider whether the regulation also applies to appeals from one set of administrative actors to another.

I

A

The Medicare program provides federally-funded health insurance to qualifying elderly and disabled individuals.  42 U.S.C. § 1395 *et seq.*  As originally enacted, Medicare paid hospitals for any "reasonable costs" of providing covered services to beneficiaries.  *See Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227 (D.C. Cir. 1994).  In 1983, however, Congress created a new Prospective Payment System, under which hospitals are paid a fixed amount for each beneficiary treated, regardless of their actual costs.  *See id.*

Prospective payment amounts are determined annually, under a statutory formula that depends in part on base rates known as "standardized amounts."  *See* 42 U.S.C. § 1395ww(d)(2)(C).   In turn, the standardized amounts depend in part on the "allowable operating costs per discharge of inpatient hospital services."  *See id.* § 1395ww(d)(2)(A). Although prospective payment amounts are adjusted over time in various ways, the standardized amounts themselves are not.

*See id.* § 1395ww(d)(3). Those amounts were calculated in 1983, based on hospitals' cost-reporting data from 1981. *See* Prospective Payments for Medicare Inpatient Hospital Services, 48 Fed. Reg. 39,752, 39,763–67 (Sept. 1, 1983). To this day, therefore, Medicare payments for inpatient services depend in part on factual determinations derived from 1981 data and embedded in 1983 calculations, including the calculation of "allowable operating costs per discharge."

In the first instance, decisions about how much to pay individual hospitals are made by fiscal intermediaries (now called "Medicare administrative contractors") acting on behalf of the Centers for Medicare & Medicaid Services ("CMS"), the component within HHS that administers Medicare for the Secretary. *See* 42 U.S.C. § 1395h; *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 150 (2013). At the end of every year, participating hospitals submit a cost report to an intermediary, which reviews the report, determines appropriate payments for the services rendered, and then issues a Notice of Program Reimbursement. *See id.*

A dissatisfied hospital has two ways to challenge such an annual reimbursement decision. First, under the Medicare Act, the hospital may appeal as of right to the Provider Reimbursement Review Board ("PRRB" or "Board"), an administrative tribunal appointed by the Secretary, within 180 days of receiving notice of the fiscal intermediary's final decision. 42 U.S.C. § 1395*oo*(a)(3). After an adverse PRRB decision, a hospital may seek further review by the Secretary and then by a federal district court. *See id.* § 1395*oo*(f)(1). Second, under HHS regulations, a hospital may request the "reopening" of a "Secretary determination, a contractor determination, or a decision by a reviewing entity." 42 C.F.R. § 405.1885(a)(1). Such a request must be received "no later than 3 years after the date of the determination or decision that

is the subject of the requested reopening." *Id.* § 405.1885(b)(2)(i). Reopenings are considered by the entity whose decision is at issue. *See id.* § 405.1885(a)(1). The decision whether to reopen is purely discretionary, and it thus "is not subject to further administrative review or judicial review." *Id.* § 405.1885(a)(6).

B

A recurring issue under this scheme has been whether a hospital, in the course of pursuing a timely-filed reopening or PRRB appeal, may contest so-called "predicate facts"—factual determinations that are relevant to the payment year at issue, but that were made in earlier years. The Secretary has argued that the three-year limitations period in the reopening regulation bars hospitals from challenging—in either reopenings or appeals to the PRRB—any predicate facts determined more than three years before the reopening or the appeal was begun.

We addressed such a contention in *Kaiser Foundation Hospitals v. Sebelius*, 708 F.3d 226 (D.C. Cir. 2013). Although *Kaiser* involved an appeal to the PRRB, we rejected the Secretary's argument under the plain terms of the reopening regulations in effect at the time. We reasoned that the "determination of an intermediary" subject to reopening was the bottom-line "determination of the amount of total reimbursement." *Id.* at 230–31 (quoting 42 C.F.R. §§ 405.1801(a), .1885(a) (2001)). We further reasoned that reopenings examined only "findings on matters at issue," a term that we construed to mean findings as relevant to the payment year for which the hospital was seeking additional reimbursement. *Id.* at 231–32 (quoting 42 C.F.R. § 405.1885(a) (2001)). We therefore held that "the reopening regulation allows for modification of predicate facts in closed

years provided that the change will only impact the total reimbursement determination in open years." *Id.* at 232–33.

In response to *Kaiser*, the Secretary promulgated the 2013 amendments to the reopening regulation directly at issue here. Provider Reimbursement Determinations and Appeals, 78 Fed. Reg. 74,826, 75,162–69 (Dec. 10, 2013). The amended regulation provides that a decision may be reopened "with respect to specific findings on matters at issue"—a term now defined to "include a predicate fact" that was "first determined for a cost reporting period that predates the period at issue." 42 C.F.R. § 405.1885(a)(1), (a)(1)(iii). Moreover, the regulation now provides that the three-year limitations period for seeking a reopening "applies to, and is calculated separately for, each specific finding on a matter at issue." *Id.* § 405.1885(b)(2)(iv). Thus, in the context of reopenings, a predicate fact now must be challenged within three years of when it is first determined.

C

Appellants in this case are 277 hospitals seeking to challenge various payment decisions spanning the last two decades. The hospitals contend that these decisions rest on errors in the 1981 cost-reporting data that were used to calculate the standardized amounts in 1983. Specifically, they argue that this data erroneously characterized transfers of patients from one hospital to another as patient discharges, thus overstating the number of discharges and understating the allowable operating costs per discharge. Because that determination was embedded in the standardized amount in 1983, it has affected payment decisions ever since.

The hospitals pursued this issue in various appeals to the PRRB filed as early as 2005. As permitted by *Kaiser*, the

hospitals sought to challenge the predicate determination of allowable operating costs per discharge, as relevant to open cost years for which they had filed timely administrative appeals. The PRRB consolidated the various appeals and dismissed them in light of the 2013 amendments to the reopening regulation. According to the PRRB, the 2013 amendments applied to these pending appeals and barred the hospitals' challenges to the much-earlier determination of allowable operating costs per discharge.

The hospitals sought further review in the district court. They raised three arguments: (1) the reopening regulation does not cover administrative appeals to the PRRB; (2) the 2013 amendments were arbitrary and capricious because they require the perpetual use of even demonstrably erroneous predicate factual determinations; and (3) application of the amendments to appeals pending on their effective date would be impermissibly retroactive.

The district court rejected all of these contentions and granted summary judgment to the Secretary. *St. Francis Med. Ctr. v. Price*, 239 F. Supp. 3d 237 (D.D.C. 2017). On the first question, the court reasoned that although the hospitals had filed timely appeals to the PRRB, they nonetheless "sought to challenge a predicate fact that was established much earlier than 180 days (or 3 years) before their filing." *Id.* at 247. According to the court, the PRRB appeals therefore involved "'reopening' a 'matter at issue,' which is subject to the time limitation of § 405.1885." *Id.*

II

On summary judgment, the district court held that the regulation governing challenges to predicate facts in reopenings also governs challenges to predicate facts in

administrative appeals to the PRRB. We review that legal conclusion *de novo*. *See Methodist Hosp.*, 38 F.3d at 1229.

In *Kaiser*, we held that there was no untimely reopening when a hospital challenged predicate facts as relevant to payments for the open years at issue. Our decision turned on what constituted the "determination of an intermediary," and what constituted "findings on matters at issue," under the terms of the reopening regulation then in effect. *See* 708 F.3d at 230–33. Accordingly, we had no occasion to address the distinct question whether the reopening regulation applies to administrative appeals in the first place. We now hold that it does not.

A

In common legal usage, nobody would confuse an *appeal*, which involves one entity reviewing the decision of another, with a reconsideration or *reopening* by the same entity that made the decision at issue. That basic distinction resolves this case: The reopening regulation applies only to reconsideration by the entity that made the decision at issue. It does not apply to administrative appeals.

As amended in 2013, the reopening regulation, titled "[r]eopening of a contractor determination or reviewing entity decision" (42 C.F.R. § 405.1885), begins as follows:

> A Secretary determination, a contractor determination, or a decision by a reviewing entity (as described in § 405.1801(a)) may be reopened, with respect to specific findings on matters at issue in a determination or decision, by CMS (with respect to Secretary determinations), by the contractor (with respect

to contractor determinations), or by the reviewing entity that made the decision (as described in paragraph (c) of this section).

*Id.* § 405.1885(a)(1). The regulation thus contemplates three kinds of possible reopenings. First, a Medicare administrative "contractor" (*i.e.*, a fiscal intermediary) may reopen its own prior decision. Second, a "reviewing entity that made the decision" (including the PRRB, *see id.* § 405.1801(a)) may reopen that decision. Third, "CMS" may reopen a "Secretary determination," consistent with its role of administering the Medicare program for the Secretary. To be sure, CMS and the Secretary of HHS are distinct administrative actors. But because CMS reports to the Secretary, and "administers Medicare on the Secretary's behalf," *St. Elizabeth's Med. Ctr. v. Thompson*, 396 F.3d 1228, 1230 (D.C. Cir. 2005), this kind of reopening cannot fairly be described as an appeal from the Secretary to CMS—and certainly not as an appeal from a fiscal intermediary to the PRRB.

Paragraph (c) of the reopening regulation, referenced in the opening provision quoted above, reinforces this analysis. It provides:

Jurisdiction for reopening a contractor determination or contractor hearing decision rests exclusively with the contractor or contractor hearing officer(s) that rendered the determination or decision (or, when applicable, with the successor contractor), subject to a directive from CMS to reopen or not reopen the determination or decision. Jurisdiction for reopening a Secretary determination, CMS reviewing official decision, a Board decision, or an Administrator decision rests exclusively with

> CMS, the CMS reviewing official, Board or Administrator, respectively.

42 C.F.R. § 405.1885(c). Thus, only a Medicare administrative contractor may reopen its own decisions (subject to direction from superiors within CMS); only CMS (acting on behalf of the Secretary) may reopen determinations of the Secretary; only a CMS reviewing official may reopen his or her own decisions; only the PRRB may reopen its own decisions; and only the Administrator of CMS may reopen her prior decisions. None of these options covers appeals from a Medicare administrative contractor to the PRRB.

Section 405.1885 also repeatedly distinguishes reopenings from appeals. It provides that "[a] request to reopen does not toll the time in which to appeal an otherwise appealable determination or decision." 42 C.F.R. § 405.1885(b)(2)(ii). Moreover, "[i]f a matter is reopened and a revised determination or decision is made, [the] revised determination or decision is appealable." *Id.* § 405.1885(a)(5). Finally, a Medicare administrative contractor may "reopen" one of its own decisions "that is currently pending on appeal before the Board." *Id.* § 405.1885(c)(3). This would make little sense if an appeal from the decision of a Medicare administrative contractor to the PRRB were simply a species of reopening.

Nothing in the limitations provisions of the reopening regulation changes this analysis. Before and after the 2013 amendments, the limitations rule stated that "[a] *reopening* made upon request is timely only if the request to *reopen* is received … no later than 3 years after the date of the determination or decision that is the subject of the requested *reopening*." 42 C.F.R. § 405.1885(b)(2)(i) (emphases added). The 2013 amendments made this limitations period run separately for each "specific finding on a matter at issue," *id.*

§ 405.1885(b)(2)(iv), and they defined "specific finding on a matter at issue" to include any "predicate fact," *id.* § 405.1885(a)(1)(iii). These changes impact how the limitations period applies to predicate-fact challenges in reopenings, but they do not extend the limitations period beyond any "reopening." Accordingly, the limitations period does not apply to PRRB administrative appeals.

B

Just as the regulations governing reopenings do not extend to appeals, the statutes and regulations governing appeals do not incorporate the rules for reopenings. The governing statute states that "[a]ny provider of services" to Medicare beneficiaries may "obtain a hearing" before the PRRB if it is "dissatisfied with a final determination of the organization serving as its fiscal intermediary … as to the amount of total program reimbursement due the provider." 42 U.S.C. § 1395*oo*(a), (a)(1)(A)(i). To obtain such a review, the provider must have timely filed with the fiscal intermediary the "required cost report" for the year at issue, *id.* § 1395*oo*(a); the amount in controversy must be at least $10,000 for individual appeals, *id.* § 1395*oo*(a)(2), or $50,000 for group appeals, *id.* § 1395*oo*(b); and the provider must "file[] a request for a hearing within 180 days after notice of the intermediary's final determination," *id.* §1395*oo*(a)(3). If those requirements are met, the PRRB "shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report." *Id.* § 1395*oo*(d). Implementing regulations track and build upon these provisions. 42 C.F.R. § 405.1835 ("Right to Board hearing"); *id.* § 405.1837 ("Group appeals"). These statutes and regulations neither reference the limitations rules that apply to reopenings nor otherwise limit the kinds of arguments that a provider may make in challenging

the fiscal intermediary's "final determination" regarding the "amount … due" for the year at issue.

One provision in the statute governing PRRB appeals makes "[c]ertain findings not reviewable"—those determined under two separate sections of the Medicare Act. 42 U.S.C. § 1395*oo*(g). Neither of those sections addresses predicate facts. *See id.* § 1395y; *id.* § 1395ww(d)(7). Accordingly, § 1395*oo*(g) provides no support for barring predicate-fact challenges in administrative appeals.[1]

The implementing regulations governing PRRB appeals contain one reference to reopenings, and it supports our analysis. In 2016, those regulations were revised to clarify that "[i]f a final contractor determination is reopened under § 405.1885, any review by the Board must be limited solely to those matters that are specifically revised in the contractor's revised final determination." *See* 42 C.F.R. § 405.1835(a)(1). That statement reinforces the conclusion that the reopening of a "final contractor determination" is different from its "review by the Board."

The provisions we have surveyed establish these basic points: A fiscal intermediary *reopening* its own decision is one thing, and the PRRB reviewing that decision on *appeal* is quite another. Reopenings and administrative appeals are conceptually different, are governed by different statutory and regulatory provisions, and, most importantly here, are governed by different limitations rules. Accordingly, there is

---

[1] The hospitals argue that any regulation barring such challenges would be inconsistent with § 1395*oo*(g), which enumerates only two categories of "findings not reviewable" in PRRB appeals. Because we conclude that the reopening regulation does not bar such challenges, we need not address that broader contention.

no basis for extending to PRRB appeals the limitations rules that govern reopenings.

## C

The countervailing arguments adopted by the district court and advanced by the Secretary are unpersuasive.

The district court reasoned that "challenging a predicate fact"—even in an administrative appeal to the PRRB—"is 'reopening' a 'matter at issue,' which is subject to the time limitations of § 405.1885." 239 F. Supp. 3d at 247. However, the cited provision merely states that a "predicate fact" may constitute a "specific finding on a matter at issue" in a reopening, 42 C.F.R. § 405.1885(a)(1)(iii), where the "3-year period" of limitations "separately" applies to each such finding, *see id.* § 405.1885(b)(2)(iv). These provisions impact the operation of a limitations rule that governs only the time for filing a "reopening." *See id.* § 405.1885(b)(2)(i). They in no way suggest that an appeal to the PRRB is such a reopening.

The Secretary attempts to bridge the gap between appeals and reopenings by highlighting a parallel reference to the two kinds of proceedings in the regulation defining a "predicate fact" as:

> a finding of fact based on a factual matter that first arose in or was first determined for a cost reporting period that predates the period at issue (in an *appeal* filed, or a *reopening* requested by a provider or initiated by a contractor, under this subpart), and once determined, was used to determine an aspect of the provider's reimbursement for one or more later cost reporting periods.

42 C.F.R. § 405.1885(a)(1)(iii) (emphases added). However, all this shows is that a predicate fact may have first been determined in an earlier appeal or reopening. It does not show that the limitations rules for reopenings also govern appeals. To the contrary, it undercuts that conclusion, by suggesting yet again that an "appeal" and a "reopening" are different.

The district court and the Secretary also highlight excerpts from the preamble to the 2013 amendments. At various points in the preamble, the Secretary asserted or assumed that the amendments covered both reopenings and appeals. *See*, *e.g.*, 78 Fed. Reg. at 75,168 ("application of the revised rules … to appeals and reopenings (including requests for reopening) that are pending on or after the same effective date, is not impermissibly retroactive"); *id.* at 75,169 ("[a] predicate fact is subject to change only through a timely appeal or reopening of the [notice of program reimbursement] for the fiscal period in which the predicate fact first arose or the fiscal period for which such fact was first determined"). However, the preamble contained no analysis explaining that assumption. Moreover, the preamble stated that although HHS had proposed and considered making amendments to the regulations governing "appeals to the Board at [42 C.F.R.] § 405.1835," it decided *not* to do so. *See id.* at 75,165, 75,169. Because the regulation itself is clear, we need not evaluate these mixed signals from the preamble, which itself lacks the force and effect of law. *See*, *e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 575–577 (2009); *Nat. Res. Def. Council v. EPA*, 559 F.3d 561, 565 (D.C. Cir. 2009).

Finally, the Secretary asks us to defer to his interpretation of the reopening regulation. However, we do not defer when an agency's interpretation of its own regulations is "plainly erroneous or inconsistent with the regulation." *See*, *e.g.*, *Auer*

*v. Robbins*, 519 U.S. 452, 461 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). Here, for the reasons given, the Secretary's interpretation is inconsistent with the text of the reopening regulation, as well as with the separate statutes and regulations governing administrative appeals. Moreover, deference would be even more inappropriate because the preamble fails to offer any reasoned explanation about how the reopening regulations might extend to PRRB appeals. *See*, *e.g.*, *AT&T Corp. v. FCC*, 841 F.3d 1047, 1049 (D.C. Cir. 2016) (declining to defer under *Auer* because agency's interpretation of its own order "does not disclose the Commission's reasoning with the requisite clarity to enable us to sustain its conclusion").

III

We hold that 42 C.F.R. § 405.1885 does not apply to appeals from a fiscal intermediary to the PRRB. Accordingly, we have no occasion to address whether the 2013 amendments to that regulation were arbitrary and capricious or whether applying the amendments to proceedings pending on their effective date would be impermissibly retroactive.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

KAVANAUGH, *Circuit Judge*, concurring: I join the Court's excellent opinion. The Court agrees with the hospitals that HHS's 2013 regulation applies only to reopenings, not to appeals. I add this concurring opinion to also express my agreement with the hospitals' broader argument that the 2013 regulation is arbitrary and capricious, and therefore should be vacated.

HHS calculates hospitals' Medicare reimbursements by employing a formula predicated on statistics for hospital discharges in 1981. The hospitals believe that the 1981 statistics are faulty. In *Kaiser Foundation Hospitals v. Sebelius*, 708 F.3d 226 (D.C. Cir. 2013), we ruled that hospitals could challenge erroneous predicate facts used by HHS to calculate hospitals' Medicare reimbursements for open cost years. In the wake of *Kaiser*, hospitals could not reopen *closed* cost years, but they could challenge erroneous predicate facts – such as the 1981 statistics on hospital discharges – used to calculate their ongoing reimbursements for *open* cost years.

In 2013, seeking to override the result in *Kaiser*, HHS promulgated the rule at issue here to bar hospitals from challenging the predicate facts used to calculate Medicare reimbursements for open cost years. Even assuming that HHS's regulation does not contravene the Medicare statute, the regulation is arbitrary and capricious. As the Supreme Court stated in a related case – where HHS was defending a different rule *allowing* hospitals to challenge erroneous predicate facts – it is not reasonable for HHS to "cement misclassified" costs into "future reimbursements, thus perpetuating literally million-dollar mistakes." *Regions Hospital v. Shalala*, 522 U.S. 448, 462 (1998).

In the district court's decision in *Kaiser*, Judge Boasberg labeled HHS's approach of barring challenges to erroneous predicate facts as an "absurdity." *Kaiser Foundation Hospitals v. Sebelius*, 828 F. Supp. 2d 193, 203 (D.D.C. 2011). Sounds

about right.  Indeed, it would seem to be the very definition of arbitrary and capricious for HHS to knowingly use false facts when calculating hospital reimbursements.  That is particularly so when those erroneous facts cost hospitals hundreds of millions of dollars.  That is real money.

HHS contends that its rule barring hospitals from challenging erroneous predicate facts is reasonable because of the agency's interest in finality.  That argument makes little sense here.  The hospitals are not seeking to reopen closed cost years.  If they were, then HHS's finality argument would make a good deal of sense.  The hospitals are merely challenging the factual inputs for the *ongoing* calculations of reimbursements for *open* cost years.  The finality defense is makeweight.  HHS's apparent goal, as Judge Boasberg explained in *Kaiser*, is to save money by paying out less in reimbursements to hospitals.  Saving money is a laudable goal, but not one that may be pursued by using phony facts to shift costs onto the backs of hospitals.  The HHS regulation is arbitrary and capricious, and therefore should be vacated.